UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE OHIO CASUALTY                                   CASE NO:
INSURANCE COMPANY


VERSUS                                              JUDGE:


RYDER & RYDER, LTD. and                             MAG. JUDGE:
PATRICK B. RYDER, JR.

### THE OHIO CASUALTY INSURANCE COMPANY'S
### COMPLAINT FOR INDEMNITY

Plaintiff, The Ohio Casualty Insurance Company, a wholly-owned subsidiary of Liberty Mutual Insurance Company ("Liberty Mutual"), through undersigned counsel, files this Complaint for Indemnity, Specific Performance, and Other Relief against Defendants, Ryder & Ryder, Ltd. and Patrick B. Ryder, Jr. (collectively, "Indemnitors"), and respectfully states:

## I.    PARTIES

1.    Plaintiff, The Ohio Casualty Insurance Company, is an Ohio corporation, and subsidiary of Liberty Mutual Group. Liberty Mutual Group is a Massachusetts corporation with its principal place of business in Boston, Massachusetts. Liberty Mutual Group is authorized to transact business and has transacted business in the State of Louisiana.

2.    Defendant, Ryder & Ryder, Ltd., upon information and belief, is a Louisiana corporation with its principal place of business in Ponchatoula, Louisiana, whose Sole Director, President, and Officer, Patrick B. Ryder, Jr., is a citizen and resident of Tangipahoa Parish, Louisiana.

3.    Defendant, Patrick B. Ryder, Jr., a person of full age of majority and a resident and domiciliary of Ponchatoula, Louisiana.

## II.    <u>JURISDICTION AND VENUE</u>

1.

This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of the parties as the matter in controversy is between citizens of different states.

2.

Venue is proper in the United States District Court for the Eastern District of Louisiana under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this judicial district and the Defendants also reside within this judicial district.

3.

Additionally, venue is proper because the Indemnitors contractually agreed, "As to any legal action or proceeding related to this Agreement [General Agreement of Indemnity], Indemnitors consent to the general jurisdiction of any local, state or Federal court of the United States, its territories and commonwealths having proper subject matter jurisdiction or in any court of the United States, its territories, or commonwealths in which any claim may be brought against Surety under any Bonds, and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis."

4.

Complete diversity among the parties exists because Plaintiff, The Ohio Casualty Insurance Company, is a citizen of Ohio for diversity purposes, and all Defendants are citizens of Louisiana for diversity purposes. Further, the amount in dispute in this matter exceeds $75,000.00. Therefore, this Court has diversity jurisdiction over this matter.

### III.    FACTUAL ALLEGATIONS

A. *Indemnitors Executed an Indemnity Agreement in Favor of Liberty Mutual*

5.

Liberty Mutual is a surety company that issues payment and performance bonds and stands as surety for select contractors.

6.

Ryder & Ryder, Ltd. is a general contractor.

7.

On or about November 3, 2022, the Indemnitors executed a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Liberty Mutual. A true and accurate copy of the Indemnity Agreement is attached hereto as Exhibit "A".

8.

Pursuant to the Indemnity Agreement, the Indemnitors agreed to fully indemnify, exonerate, and hold Liberty Mutual harmless from and against any and all Loss[1] incurred

---

[1] "Loss" is defined as "any loss, fees, costs and expenses, including pre- and post-judgment interest at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering and outside consulting fees, which Surety may sustain or incur or otherwise determine to pay in its sole and absolute discretion, by reason of: (a) a request for a Bond; (b) execution or procurement of a Bond, including any cost incurred by Surety in fulfilling its obligations under

by Liberty Mutual in connection with any Bond requested from or issued by Liberty Mutual for any Principal.

9.

Pursuant to the Indemnity Agreement, the Indemnitors are also obligated to produce to Liberty Mutual their financial books and records.

10.

Additionally, the Indemnitors assigned, transferred, and conveyed to Liberty Mutual as collateral security for full performance of the obligations of the Indemnity Agreement, various rights, titles, and interests in property.

11.

Regarding the Indemnitors' obligation to indemnify and hold harmless Liberty Mutual, the Indemnity Agreement provides:

> Indemnitors shall exonerate, hold harmless, indemnify, and keep Surety indemnified from all liability for Loss. Indemnitors shall pay Surety for Loss promptly upon demand. If Surety makes any Loss payment, Indemnitors agree that in any accounting between Surety and Principals, between Surety and Indemnitors, or either or both of them, Surety is entitled to recover from Indemnitors all disbursements made in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by Surety shall be prima facie evidence of the fact and amount of the liability to Surety.

---

any Bond; (c) the failure of Indemnitors to comply with any covenants or conditions of this Agreement or Other Agreement; or (d) in enforcing any of the covenants and conditions of this Agreement or Other Agreements."

12.

Additionally, the Indemnitors agreed to deposit collateral security upon demand by Liberty Mutual to secure Liberty Mutual against anticipated future Losses as follows:

> Upon an Event of Default or determination by Surety that a potential Loss exists, Surety may demand that Indemnitors deposit a sum of money equal to an amount determined by Surety, or collateral security of a type and value satisfactory to Surety to cover the Loss, whether or not Surety has: (a) established or increased any reserve; (b) made any Loss payment; or (c) received any notice of any claims therefor. At Surety's sole option, this collateral may be in addition to and not in lieu of any other collateral, and Surety may make multiple demands for collateral. Unless the Indemnitors and Surety agree otherwise in writing, Surety shall have the right to use any collateral or any part thereof in payment or settlement of any liabilities for which Indemnitors would be obliged to indemnity Surety and Surety shall have no obligation to invest or to provide a return on any collateral provided.

13.

The Indemnitors are joint and severally liable for their obligations under the Indemnity Agreement.

14.

Regarding the Indemnitors' obligation to permit the inspection of their books and records, the Indemnity Agreement provides:

> Indemnitors agree to furnish Surety such information as it may request from time to time concerning the financial condition of Indemnitors, the status of work under any contract or other obligation covered by a Bond, the condition of the performance of any such contract or other obligation and the payment obligations incurred in connection with it. The Surety may at reasonable times and places and from time to time, examine and copy the books, records and accounts of any Indemnitor. The Surety may obtain information concerning the affairs and operations of any Indemnitor and any transaction between or among the Indemnitors from any banks, depositories, obligees of the Bonds, materialmen, supply houses, credit reporting agencies or other persons, each of whom are hereby expressly authorized by Indemnitor to furnish such information to the Surety.

15.

Additionally, regarding the Indemnitors' assignment of certain rights to Liberty Mutual, Paragraph 6 of the Indemnity Agreement provides, in pertinent part, that:

> Indemnitors hereby assign, transfer, pledge and covey to [Liberty Mutual] as collateral security for the full performance of this Agreement, Other Agreements, and the payment of any other indebtedness or liability to Surety, whether incurred in the past or the future, all right, title and interest in and growing out of….

> (c) All machinery, supplies, equipment, plant, tools and materials in which Indemnitors and/or Principals have an interest which are now or in the future may be on the site of any bonded contract or elsewhere, including materials purchased for or chargeable to any bonded contract, materials in the process of construction, in storage, or in transportation to any and all sites…

**B. Liberty Mutual Issued Bonds on Behalf of Indemnitors in Connection with Multiple Projects**

16.

In reliance on its rights and Indemnitors' obligations under the Indemnity Agreement, Liberty Mutual issued multiple payment and performance bonds to Indemnitors in connection with multiple projects.

17.

Liberty Mutual issued Performance Bond and Payment Bond No. 999271256 in favor of Hospital Service District No. 1 of Tangipahoa Parish d/b/a North Oaks Health System in connection with a project known as NOMC Pharmacy Air Handler Addition and Renovations to Comply with USP 797, (the "Pharmacy Project").

18.

Liberty Mutual also issued Performance Bond and Payment Bond No. 999292678 in favor of Calcasieu Parish School Board in connection with a project for Hurricane Laura repairs at Iowa High School in Iowa, Louisiana (the "Iowa High School Project").

19.

Liberty Mutual also issued Performance and Payment Bond No. 999306033 in favor of Calcasieu Parish School Board in connection with a project for Hurricane Laura repairs and restoration of the Rosteet Annex (the "Rosteet Annex Project").

20.

Liberty Mutual also issued Performance and Payment Bond No. 022235173 in favor of Calcasieu Parish School Board in connection with hurricane repairs at Sulphur High School in Sulphur, Louisiana (the "Sulphur High School Project").

21.

Additionally, Liberty Mutual issued Performance Bond and Payment Bond No. 18L005703 in favor of Calcasieu Parish Police Jury in connection with a project for asbestos removal and abatement at the Old Courthouse (the "Old Courthouse Project").

22.

Lastly, Liberty Mutual issued Performance and Payment Bond No. 999273111 in favor of City of Ponchatoula in connection with renovations to the Buddy Dufreche Baseball Stadium in Ponchatoula, Louisiana (the "Baseball Stadium Project").

C. *Liberty Mutual incurred Losses as a result of issuing the Bonds.*

23.

As a result of issuing the Bonds, Liberty Mutual has incurred Losses in excess of $75,000.00.

24.

To date, Liberty Mutual has incurred Losses under the Bonds totaling $873,593.43. Liberty Mutual's Losses continue to increase.

25.

At present, Liberty Mutual has received claims totaling $1,246,526.25 and that amount continues to grow.

26.

Liberty Mutual's Losses under the Bonds, as defined in the Indemnity Agreement, and as of January 31, 2025, are itemized as follows:

| CLAIMANT | PROJECT | AMOUNT CLAIMED |
|---|---|---|
| Infinity Energy Services | Sulphur High School | $9,070.00 |
| Elite Roofing Supply TX LLC | Sulphur High School | $69,137.00 |
| Daughdrill General Contracting & Roofing Co. Inc. | Sulphur High School | $462,623.02 |
| Decker Disposal, LLC | Sulphur High School | $5,192.25 |
| Daigle Contracting | Sulphur High School | $29,560.00 |
| MCT Sheet Metal, Inc. | Old Courthouse | $67,623.00 |
| The Sherwin-Williams Company | Baseball Stadium | $11,862.81 |
| Hat's Equipment, Inc. | Baseball Stadium | $55,488.01 |
| Eustis Engineering, LLC | Baseball Stadium | $1,700.30 |
| Panel Built Corporation | Iowa High School | $249,250.00 |
| Global Crane & Rigging Certification, Inc. | Iowa High School | $9,100.00 |

| Decker Disposal, LLC | Iowa High School | $5,192.25 |
| PAI Ready Mix, LLC | Iowa High School | $8,000.00 |
| Louisiana Concrete Pumpers, LLC | Iowa High School | $4,553.50 |
| Vector Sales, Inc. | Iowa High School | $3,206.83 |
| Infinity Energy Services | Iowa High School | $34,694.70 |
| Allstate Canopies & Rooms, LLC | Iowa High School | $86,721.00 |
| Crawford Electric Supply | Iowa High School | $27,223.73 |
| Trouth Plumbing & Heating, Inc. | Iowa High School | $43,424.10 |
| TKV Electric, LLC | Iowa High School | $1,961.77 |
| TKV Electric, LLC | Rosteet Annex | $28,000.00 |
| Decker Disposal, LLC | Rosteet Annex | $5,192.25 |
| Daigle Contracting | Rosteet Annex | $21,832.00 |
| Infinity Energy Services | Rosteet Annex | $812.00 |
| Vector Sales, Inc. | Rosteet Annex | $2,655.83 |
| Trouth Plumbing & Heating, Inc. | Rosteet Annex | $29,673.63 |

27.

Liberty Mutual's current anticipated losses under the Bonds are in excess of $5,000,000.00.

**D.** *Liberty Mutual Demanded Indemnification and Collateralization*

28.

On or about January 6, 2025, undersigned counsel, on behalf of Liberty Mutual, issued a letter demanding the Indemnitors indemnify Liberty Mutual for its Losses arising under the Bonds and collateralize Liberty Mutual pursuant to Liberty Mutual's rights and the Indemnitors' obligations under the Indemnity Agreement.

29.

The Indemnitors have neither indemnified nor collateralized Liberty Mutual for its Losses and are in default under the Indemnity Agreement.

30.

Since the January 6, 2025, letter, and through the filing of this suit, Liberty Mutual continues to incur Losses, as that term is defined in the Indemnity Agreement, as a result of issuing the Bonds.

31.

Ryder & Ryder have been default terminated from multiple bonded projects, including Sulphur High School and the Rosteet Annex. As a result, Liberty Mutual anticipate incurring additional Losses in the takeover and completion of these bonded projects, as well as any others Ryder & Ryder may be default terminated from in the future.

### E. Liberty Mutual Demanded Production of Books and Records

32.

Under the Indemnity Agreement, Liberty Mutual is entitled to review the books and records of the Indemnitors.

33.

On multiple occasions, Liberty Mutual demanded Indemnitors provide financial records and information pertaining to the Indemnitors' financial status.

34.

The Indemnitors have not produced the requested information. Rather, Indemnitors contend, without proving, they have the financial means to continue work on the other bonded projects. Nevertheless, Liberty Mutual is still actively receiving claims for subcontractors and suppliers the Indemnitors have failed to pay across all of the bonded projects.

### F. Liberty Mutual Believes the Indemnitors Have or Will Remove Materials from the Site of the Bonded Project(s)

35.

Under the Indemnity Agreement, Indemnitors assigned to Liberty Mutual certain rights, titles and interest, including those for all machinery, supplies, or equipment on the site of any bonded contract or elsewhere. As such, subject materials cannot be removed from the Project site without Liberty Mutual's consent.

36.

On information and belief, Indemnitors have removed certain materials from the Rosteet Annex Project site, from which Indemnitors were default terminated, without Liberty Mutual's consent.

37.

Specifically, on or about February 25, 2025, Liberty Mutual was informed certain materials consisting of approximately five (5) boxes of ceiling tile and the remaining grid for the library service area were removed from the Project site. This was done without the consent of Liberty Mutual and in violation of Liberty Mutual's rights under the Indemnity Agreement.

## IV.   CAUSES OF ACTION

### Count 1 – Breach of Indemnity Agreement

38.

Liberty Mutual realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth or fully alleged herein.

39.

Pursuant to the Indemnity Agreement, the Indemnitors are obligated to fully indemnify and exonerate Liberty Mutual and hold it harmless from and against any and all Losses incurred in connection with issuing the Bonds for the Projects.

40.

The Indemnitors have failed to perform or honor their obligations under the Indemnity Agreement to indemnify Liberty Mutual for the Losses it has incurred and continues to incur arising from and related to Liberty Mutual's issuance of the Bonds and enforcement of the Indemnity Agreement.

41.

Liberty Mutual expressly reserves the right to amend and supplement its claim for indemnification from any or all of the Indemnitors in connection with the Projects. Liberty Mutual further reserves any rights, defenses, and claims it may have pursuant to the Indemnity Agreement, the bonded contracts, and/or at law.

***Count 2 – Specific Performance***

42.

Liberty Mutual realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth or fully alleged herein.

### A. **Specific Performance to Deposit Collateral Security**

43.

Pursuant to the Indemnity Agreement, the Indemnitors are required to collateralize Liberty Mutual Upon an Event of Default or determination by Liberty Mutual that a potential Loss exists.

44.

Liberty Mutual has demanded collateral security for anticipated Losses arising from and related to Liberty Mutual's issuance of the Bonds and enforcement of the Indemnity Agreement. Liberty Mutual anticipates potential losses in excess of $5,000,000.00, plus attorneys' fees and costs.

45.

To date, the Indemnitors have failed to honor their obligations under the Indemnity Agreement and provide collateral security to Liberty Mutual for their anticipated Losses.

46.

Liberty Mutual will suffer irreparable harm, loss, or damage if its contractual right to collateral is not enforced. Liberty Mutual has no other adequate remedy at law and the public interest is served by granting the request for injunction, as the public has an interest in the enforcement of parties' bargained-for contractual rights and obligations.

47.

Liberty Mutual is entitled to specific performance of any and/or all of the Indemnitors' obligations, including the obligation to deposit with Liberty Mutual collateral security in the amount demanded.

48.

As Liberty Mutual's right to demand specific performance to deposit collateral security under the Indemnity Agreement is ongoing, Liberty Mutual reserves the right to amend and supplement its claim to demand collateral for additional losses as they are incurred from any and/or all of the Indemnitors in connection with the Projects and the Bonds. Liberty Mutual further reserves any rights, defenses, and claims it may have pursuant to the Indemnity Agreement, the bonded contracts, and/or at law.

**B.  Specific Performance to Permit Liberty Mutual to Review Books and Records**

49.

Pursuant to the Indemnity Agreement, the Indemnitors are obligated to furnish and allow Liberty Mutual to inspect their financial books and records.

50.

Despite Liberty Mutual's request and the clear and unambiguous language of the Indemnity Agreement, Indemnitors have refused to perform or honor their specific obligations to produce information and documentation concerning the business or financial situation of the Indemnitors and permit Liberty Mutual to access, examine and copy the books, records, and accounts of Indemnitors.

51.

Liberty Mutual will suffer immediate irreparable harm and will have no adequate remedy of law if it cannot obtain the information on the Indemnitors' financial condition, in that Liberty Mutual will be unable to identify potential sources of recovery on its legal

claims in this matter before a judgment may be rendered, and Liberty Mutual will be unable to secure enforcement of its rights to indemnity.

52.

Liberty Mutual is entitled to specific performance of any and/or all of the Indemnitors' obligations, including the obligation to provide information on the Indemnitors' financial condition and review their financial records and books.

## C. Specific Performance to Preserve Assets

53.

Under the clear and unambiguous terms of the Indemnity Agreement, Indemnitors expressly assigned certain rights and interests to Liberty Mutual, including any interest in certain machinery, supplies, and equipment from the Project site. As such, the Indemnitors cannot dispose of any such assets without the consent of Liberty Mutual. Implicit in this is an obligation of the Indemnitors to preserve these assets.

54.

Upon information and belief, Indemnitors have removed certain materials from the Rosteet Project site. Liberty Mutual has not given consent for the removal of any materials from any of the bonded project sites.

55.

If the Indemnitors remove or dispose of these assets, Liberty Mutual will suffer immediate and irreparable harm. Specifically, Liberty Mutual will be deprived of a property interest in the materials, equipment, and machinery removed.

15

56.

As such, in accordance with the terms of the Indemnity Agreement, Liberty Mutual is entitled to the entry of a judgment obligating the Indemnitors to preserve the property to which the rights, titles, and interests were conveyed to Liberty Mutual.

### Count 3 – Application for Preliminary Injunctions

### A.  Application for Preliminary Injunction to Deposit Collateral Security

57.

Liberty Mutual incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

58.

Liberty Mutual hereby applies for a preliminary injunction ordering the indemnitors to deposit $5,000,000.00 in collateral immediately with Liberty Mutual. This represents the amount that Liberty Mutual has determined to be sufficient to discharge the Losses and anticipated Losses incurred by reason of having issued the Bonds.

59.

The purpose of a preliminary injunction is to preserve the *status quo* of the litigation's subject matter pending trial on the merits. *Canal Auth. Of State of Fla. v. Callaway* 489 F.2d 567, 576 (5th Cir. 1974). Such purpose is achieved here.

60.

Liberty Mutual is entitled to the entry of a preliminary injunction against the Indemnitors because (1) there is a substantial likelihood that Liberty Mutual will prevail on the merits, (2) there is a substantial threat that irreparable harm will result to Liberty

Mutual if the injunction is not granted, (3) the threatened injury to Liberty Mutual outweighs the threatened harm to the Indemnitors, and (4) the granting of the preliminary injunction will not disserve the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

61.

Liberty Mutual will likely prevail on the merits because the valid and binding Indemnity Agreement provides Liberty Mutual with the right to be collateralized, on demand, in an amount as determined by Liberty Mutual at its sole discretion to be sufficient to indemnify and hold it harmless from the losses and potential liability incurred by reason of having issued the Bonds.

62.

Despite Liberty Mutual's demand letter dated January 6, 2025, to the Indemnitors to be collateralized in the amount of $1,084,398.00, the Indemnitors have refused to post collateral as demanded.

63.

Therefore, it is likely that Liberty Mutual will prevail on the merits because the conditions of the collateral security provision of the Indemnity Agreement have already been met. Liability has been asserted against Liberty Mutual by reason of having issued the Bonds, Liberty Mutual has made a clear and express collateral demand upon the Indemnitors in an amount demanded against Liberty Mutual that Liberty Mutual deems sufficient in its sole discretion to indemnify and hold it harmless, and the Indemnitors have failed to honor or perform their obligations accordingly.

17

64.

The injunctive relief is necessary because Liberty Mutual will suffer imminent and irreparable harm if it does not receive the protection it has a right to receive under the Indemnity Agreement.

65.

Liberty Mutual would suffer irreparable harm without a preliminary injunction because in the absence of such an injunction, Liberty Mutual's contracted-for collateral security rights have been rendered meaningless as a result of the Indemnitors' refusal to honor their obligations under the Indemnity Agreement.

66.

Liberty Mutual is at further risk of immediate and irreparable harm in that the Indemnitors may be unable to perform or meet their specific obligations under the Indemnity Agreement.

67.

The threatened injury to the Indemnitors does not outweigh the harm to Liberty Mutual if a preliminary injunction is not issued because the issuance of an injunction will only require the Indemnitors to do that which they have already agreed to do—namely, to collateralize Liberty Mutual.

68.

Thus, injunctive relief serves to preserve the *status quo* until the rights of Liberty Mutual and Indemnitors can be determined.

69.

The Indemnitors are not injured by being held to the Indemnity Agreement to which they are signatories.

70.

Finally, injunctive relief will not adversely affect the public interest. To the contrary, ensuring the solvency of sureties such as Liberty Mutual who provide performance and payment bonds in accordance with the Louisiana Public Works Act to guarantee that public projects are completed and that subcontractors and suppliers to public projects are paid is very much in the public interest.

71.

Liberty Mutual is willing to post security in the amount the Court deems appropriate.

72.

Liberty Mutual asks the court to set the request for a preliminary injunction for hearing at the earliest possible time.

**B.  *Application of Preliminary Injunction to Furnish Books and Records***

73.

Liberty Mutual hereby applies for a preliminary injunction ordering the Indemnitors to immediately furnish to Liberty Mutual all financial books and records pertaining to the financial condition of Indemnitors, status of the work under all contracts and obligations covered by the Bonds, and the condition of the performance of all contracts or obligations and the payment of obligations incurred in connection with it.

74.

Liberty Mutual is entitled to the entry of a preliminary injunction against the Indemnitors because (1) Liberty Mutual will likely prevail on the merits because the valid and binding Indemnity Agreement obligates Indemnitors to furnish financial records upon demand, (2) there is a substantial threat that Liberty Mutual will suffer irreparable harm if the injunction is not granted, (3) the threatened injury to Liberty Mutual outweighs the threatened harm to the Indemnitors, and (4) the granting of the preliminary injunction will not disserve the public interest.

75.

Despite demand, Indemnitors have failed to perform their obligation of furnishing financial records.

76.

Injunctive relief is necessary because Liberty Mutual will suffer imminent and irreparable harm if it does not receive the protection of a preliminary injunction. In the absence of an injunction, Liberty Mutual's contracted-for right to examine the Indemnitors' financial records will have been rendered meaningless.

77.

The threatened injury to the Indemnitors does not outweigh the harm to Liberty Mutual if a preliminary injunction is not issued because the issuance of an injunction will only require the Indemnitors to do that which they have already agreed to do – namely, furnish financial records to Liberty Mutual. Furthermore, the Indemnitors are not injured by being held to the terms of the Indemnity Agreement to which they are signatories.

78.

Injunctive relief will not adversely affect the public interest. First, the public has an interest in the enforcement of the terms of their contracted-for rights under the contracts they may enter into.

79.

Liberty Mutual asks the Court to set this request for a preliminary injunction for hearing at the earliest possible time. Preferably, in concurrence with the other requests for preliminary injunctions contained herein.

### C. *Application of Preliminary Injunction to Preserve Assets*

80.

Liberty Mutual hereby applies for a preliminary injunction ordering Indemnitors to refrain from removing, disposing of, or otherwise restricting Liberty Mutual's rights to the property identified in the Indemnity Agreement without Liberty Mutual's consent. Particularly, Liberty Mutual requests a preliminary injunction restricting Indemnitors from removing any machinery, materials, equipment, or other assets from any of the bonded project sites.

81.

Liberty Mutual is entitled to entry of a preliminary injunction to preserve the *status quo* against Indemnitors because (1) there is a substantial likelihood that Liberty Mutual will prevail on the merits, (2) there is a substantial threat that irreparable harm will result to Liberty Mutual if the injunction is not granted, (3) the threatened injury to Liberty

Mutual outweighs the threatened harm to Indemnitors, and (4) the granting of the preliminary injunction will not disserve the public interest.

82.

As stated above, the Indemnity Agreement includes express provisions whereby Indemnitors assigned certain rights, titles, and interests to Liberty Mutual. This includes machinery, materials, and equipment on the Project site.

83.

Despite demand to return materials that, upon information and belief, were removed from the Rosteet Project site, the Indemnitors have failed to act in accordance with their obligations under the Indemnity Agreement and return the materials. As such, Liberty Mutual will likely prevail on the merits because the Indemnity Agreement assigns all rights, titles, and interest to certain property to Liberty Mutual. Therefore, it cannot be disposed of or removed without Liberty Mutual's consent.

84.

The injunctive relief is necessary because Liberty Mutual will suffer imminent and irreparable harm if Indemnitors remove materials from the Rosteet Project site. Specifically, Liberty Mutual will effectively be deprived of a contractually guaranteed property right granted to them by virtue of the assignments in the Indemnity Agreement.

85.

Any threatened injury to the Indemnitors is outweighed  by the harm to Liberty Mutual if the preliminary injunction is not issued.

86.

Furthermore, granting the preliminary injunction will not disserve public interests. Property rights are sacred in the American legal system. Allowing Indemnitors to remove and potentially dispose of the materials will deprive Liberty Mutual of property rights. The public has an interest in preserving property rights assigned by contractual agreement.

87.

Thus, injunctive relief serves to preserve the *status quo* until the rights of Liberty Mutual and the Indemnitors can be determined.

88.

Liberty Mutual asks the court to set the request for preliminary injunction for hearing at the earliest possible time. Preferably, in concurrence with the other requests for preliminary injunctions contained herein.

### *Count 4 – Application for Permanent Injunction*

89.

Liberty Mutual hereby incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

### A. <u>Application for Permanent Injunction to Deposit Collateral Security</u>

90.

Liberty Mutual requests that the foregoing preliminary injunction to deposit collateral security be converted into a permanent injunction after trial on the merits.

91.

For the same reasons as articulated above, permanent injunctive relief is appropriate here because (1) Liberty Mutual will be successful on the merits of its claim, (2) there is no available remedy at law, and (3) the balance of equities favors granting such relief.

92.

The valid and binding Indemnity Agreement provides Liberty Mutual with the right to be collateralized, on demand, in an amount as determined by Liberty Mutual sufficient to discharge any Loss or anticipated Loss incurred by reason of having issued the Bonds.

93.

Despite Liberty Mutual's demand letter dated January 6, 2025, to the Indemnitors to be collateralized in the amount of $1,084,398.00, representing an amount determined by Liberty Mutual sufficient to discharge any Loss or anticipated Loss incurred by reason of having issued the Bonds – Indemnitors have refused to post collateral as demanded.

94.

Accordingly, Liberty Mutual will prevail on the merits because conditions of the collateral security provision of the Indemnity Agreement have already been met.

95.

Irreparable harm is one basis for showing the inadequacy of any legal remedy. Liberty Mutual would suffer irreparable harm without a permanent injunction because in the absence of such an injunction, Liberty Mutual's contracted-for collateral security rights have been rendered meaningless due to the Indemnitors' refusal to post collateral.

96.

Finally, it is plain that, in evaluating the balances of equities, they favor enforcement of Liberty Mutual's collateral security rights, as this simply represents requiring Indemnitors to specifically perform their contracted-for obligations.

**B. Application for Permanent Injunction to Furnish Books and Records**

97.

Liberty Mutual requests that the foregoing preliminary injunction to furnish books and records be converted into a permanent injunction after trial on the merits.

98.

For the same reasons articulated above, permanent injunctive relief is appropriate here because (1) Liberty Mutual will be successful on the merits of its claim, (2) there is no available remedy at law, and (3) the balance of equities favors granting such relief.

99.

Despite demand, Indemnitors have failed to perform their obligation of furnishing financial records.

100.

Injunctive relief is necessary because Liberty Mutual will suffer imminent and irreparable harm if it does not receive the protection of a permanent injunction. In the absence of an injunction, Liberty Mutual's contracted-for right to examine the Indemnitors' financial records will have been rendered meaningless.

101.

In evaluating the balance of equities, they favor enforcement of Liberty Mutual's contracted-for right to demand financial records, as it requires the Indemnitors to specifically perform their contracted-for obligations.

## C. <u>Application for Permanent Injunction to Preserve Assets</u>

102.

Liberty Mutual requests that the foregoing preliminary injunction be converted into a permanent injunction after trial on the merits.

103.

For the same reasons articulated above, permanent injunctive relief is appropriate here because (1) Liberty Mutual will be successful on the merits of this claim, (2) there is no available remedy at law, and (3) the balance of equities favors granting such relief.

104.

Despite demand, on information and belief, the Indemnitors have failed to return the materials that were removed from the Rosteet Annex Project site.

105.

Injunctive relief is necessary because Liberty Mutual will suffer imminent and irreparable harm if it does not receive the protection of a permanent injunction. In the absence of an injunction, Liberty Mutual may be deprived of their contracted-for rights, interests, and titles in the various property contained in the Indemnity Agreement, including the specific materials that have been removed already or may be removed in the future.

106.

In assessing the balance of equities, they favor enforcement of Liberty Mutual's contracted-for property rights, as the Indemnitors expressly agreed to assign such rights in the Indemnity Agreement.

### Count 5 – Quia Timet

107.

Liberty Mutual hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

108.

Liberty Mutual reasonably anticipates that, by reason of having acted as surety on behalf of Indemnitors, it will sustain losses if this matter proceeds to trial and Indemnitors (and, secondarily, Liberty Mutual) is found liable or partially liable to the Obligee(s) under the Bonds for the damages they may seek.

109.

By virtue of the equitable doctrine of *quia timet*, Liberty Mutual is entitled to have Indemnitors place funds or other security with Liberty Mutual sufficient to cover the liability, if any, of Liberty Mutual by reason of having issued the Bond on behalf of Indemnitors, including without limitation the penal sum of the Bond and all costs incurred by Liberty Mutual to date, as well as costs anticipated by Liberty Mutual, including attorneys' fees, consultant fees, and other costs.

### *Attorney's Fees*

110.

Liberty Mutual realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth or fully alleged herein.

111.

Liberty Mutual is entitled to attorney's fees under its bargained for rights under the Indemnity Agreement.

### *Interest*

112.

Liberty Mutual is also entitled to recover pre-judgment interest from the Indemnitors at the highest rate allowed by law. Further, if Liberty Mutual recovers on this action, it is entitled to post-judgment interest at the highest rate allowed by law, from the date of the judgment until such judgment is satisfied.

### *Prayer*

WHEREFORE, Plaintiff, The Ohio Casualty Insurance Company, a wholly-owned subsidiary of Liberty Mutual Insurance Group, respectfully prays that after due proceeds are had this Court enter a judgment in favor of Liberty Mutual ordering Indemnitors, Ryder & Ryder, Ltd. and Patrick B. Ryder, Jr. to:

A. Indemnify Liberty Mutual for all of its losses and expenses arising from and relating to Liberty Mutual's issuance of the Bonds and enforcement of the Indemnity Agreement, totaling at least $873,593.43. and growing, and for such further relief

as may be appropriate at law or equity in accordance with the nature of this case, including but not limited to, pre- and post-judgment interest;

B.  Collateralize Liberty Mutual for the demanded anticipated future losses of $5,000,000.00 , and continue to provide collateral security in accordance with the terms of the Indemnity Agreement, and for such further relief as may be appropriate at law or equity in accordance with the nature of this case, including but not limited to, pre- and post-judgment interest;

C.  Reimburse Liberty Mutual for attorneys' fees and expenses incurred in prosecuting this action; and

D.  All other relief, legal and equitable, to which Liberty Mutual may be entitled.

Respectfully submitted,

**KREBS FARLEY, PLLC**

  */s/Craig N. Mangum*

Craig N. Mangum (La. Bar #36898)
J. Megan Daily (La. Bar #37650)
400 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
T: (504) 299-3577 | F: (504) 299-3582
cmangum@krebsfarley.com
mdaily@krebsfarley.com

***ATTORNEYS FOR THE OHIO CASUALTY INSURANCE COMPANY***