**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THE OHIO CASUALTY INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-424** |
| **RYDER & RYDER, LTD., et al.** | **SECTION: "G"(1)** |

## ORDER AND REASONS

This matter involves claims arising out of a construction dispute between Plaintiff the Ohio Casualty Insurance Company ("Plaintiff"), a surety company, and Defendants Ryder & Ryder and Patrick B. Ryder, Jr. (collectively, "Defendants"), construction contractors.[1] Plaintiff**,** a company that issues payment and performance bonds and stands as a surety for contractors, issued bonds to enable Defendants to obtain several construction contracts.[2] Before the Court is Plaintiff's Motion to Strike Defendants' Affirmative Defenses.[3] Plaintiff argues the affirmative defenses of bad faith and abuse of rights raised by Defendants should be stricken pursuant to Federal Rule of Civil Procedure 12(f) as insufficient, immaterial, and prejudicial. For the reasons stated herein, the Court finds that a factual determination is required to assess to sufficiency of the abuse of rights defense. The Court further finds that the affirmative defense of bad faith has not been shown to be insufficient as a matter of law. Considering the motion, the opposition, the reply memorandum, the record, and the applicable law the Court denies the motion.

---

[1] Rec. Doc. 1.

[2] *Id.*

[3] Rec. Doc. 25.

## I. Background

On February 28, 2025, Plaintiff filed a complaint in this Court against Defendants Ryder & Ryder, Ltd. and Patrick B. Ryder, Jr. asserting claims for (1) breach of indemnity agreement; (2) specific performance; (3) injunctive relief; and (4) *quia timet*.[4] Ohio Casualty Insurance Company, a wholly-owned subsidiary of Liberty Mutual Insurance Company, is a surety company that issues payment and performance bonds and stands as surety for select contractors.[5] Defendant Ryder & Ryder, Ltd. ("Ryder & Ryder") is a general contractor.[6] Defendant Patrick B. Ryder, Jr. is the sole director, president, and officer of Ryder & Ryder.[7] Plaintiff alleges that on or about November 3, 2022, Defendants executed a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Plaintiff.[8] Pursuant to the Indemnity Agreement, Defendants agreed to fully indemnify and hold Plaintiff harmless from and against any loss incurred by Plaintiff in connection with any bond requested from or issued by Plaintiff for any principal, and Defendants were also obligated to produce financial books and records to Plaintiff.[9] The Complaint states that Defendants also assigned, transferred, and conveyed to Plaintiff various rights, titles, and interests in property as collateral security for full performance of the obligations of the Indemnity Agreement.[10]

The Complaint states that Plaintiff issued multiple payment and performance bonds to

---

[4] Rec. Doc. 1.

[5] *Id.* at 1, 3.

[6] *Id.* at 3.

[7] *Id.* at 1.

[8] *Id.* at 3.

[9] *Id.* at 4.

[10] *Id.*

Defendants in connection with multiple projects.[11] There are six projects referenced in the complaint: (1)  Plaintiff issued Performance and Payment Bond No. 999271256 in favor of Hospital Service District No. 1 of Tangipahoa Parish d/b/a North Oaks Health System in connection with a project known as NOMC Pharmacy Air Handler Addition and Renovations to comply with USP 797 (the "Pharmacy Project"); (2) Plaintiff issued Performance Bond and Payment Bond No. 999292678 in favor of the Calcasieu Parish School Board in connection with a project for Hurricane Laura repairs at Iowa High School in Iowa, Louisiana (the "Iowa Project"); (3) Plaintiff issued Performance and Payment Bond No. 999306033 in favor of the Calcasieu Parish School Board in connection with a project for Hurricane Laura repairs and restoration of the Rosteet Annex (the "Rosteet Project"); (4) Plaintiff issued Performance and Payment Bond No. 22235173 in favor of the Calcasieu Parish School Board in connection with hurricane repairs at Sulphur High School in Sulphur, Louisiana (the "Sulphur Project"); (5) Plaintiff issued Performance and Payment Bond No. 18L005703 in favor of the Calcasieu Parish Police Jury in connect with a project for asbestos removal and abatement at the Old Courthouse (the "Old Courthouse Project"); and (6) Plaintiff issued Performance and Payment Bond No. 999273111 in favor of the City of Ponchatoula in connection with renovations to the Buddy Dufreche Baseball Stadium in Ponchatoula, Louisiana (the "Buddy Project").[12]

According to the Complaint, as a result of issuing the aforementioned bonds, Plaintiff has incurred losses totaling $873,593.43, and the losses continue to increase.[13] The Complaint states

---

[11] *Id.* at 6.

[12] *Id* at 6–8.

[13] *Id.* at 8.

that Plaintiff has received claims totaling $1,246,526.25, and the amount continues to grow.[14] The Complaint explains that Plaintiff's current anticipated losses under the bonds are in excess of $5,000,000.00.[15]

On or about January 6, 2025, Plaintiff issued a letter demanding Defendants indemnify and collateralize Plaintiff for its losses arising under the bonds pursuant to the Indemnity Agreement.[16] According to the Complaint, Defendants have neither indemnified nor collateralized Plaintiff for its losses, and Defendants are in default under the Indemnity Agreement.[17] The Complaint explains that Ryder & Ryder has been default terminated from multiple projects, including the Sulphur Project and the Rosteet Project, and thus, Plaintiff anticipates additional losses.[18]

The Complaint alleges that Plaintiff demanded that Defendants provide financial records and information pertaining to Defendants' financial status, which have not been provided.[19] According to the Complaint, Defendants contend, without documentation, that they have the financial means to continue work on the bonded projects, however, Plaintiff continues to receive claims from subcontractors and suppliers that Defendants have failed to pay.[20]

Plaintiff explains that, under the Indemnity Agreement, Defendants assigned to Plaintiff certain rights, titles, and interests for all machinery, supplies, or equipment on the site of any bonded contract or elsewhere, and as such, subject materials cannot be removed from the project

---

[14] *Id.*

[15] *Id.* at 9.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 10.

[19] *Id.*

[20] *Id.*

site without Plaintiff's consent.[21] Plaintiff alleges that Defendants have removed certain materials from the Rosteet Project site, from which Defendants were default terminated, without Plaintiff's consent.[22] Plaintiff contends that on or about February 25, 2025, Plaintiff was informed that certain materials consisting of approximately five boxes of ceiling tile and the remaining grid for the library service area were removed from the Rosteet Project site without Plaintiff's consent.[23]

In the Answer, Defendants include affirmative defense of bad faith and abuse of rights.[24] On July 15, 2025, Plaintiff filed the instant Motion to Strike.[25] On July 28, 2025, Defendants filed an opposition to the motion.[26] On August 5, 2025, Plaintiff filed a reply memorandum in further support of the motion.[27]

## II. Parties' Arguments

### A.    *Plaintiff's Arguments in Support of the Motion*

In the motion, Plaintiff argues Defendants' affirmative defenses of bad faith and abuse of rights should be stricken because they are insufficient, immaterial, and would cause prejudice.[28] Plaintiff contends that it does not owe any duty or obligations to Defendants pursuant to the Indemnity Agreement, and thus, the affirmative defense of bad faith is inapplicable and must be

---

[21] *Id.* at 11.

[22] *Id.*

[23] *Id.*

[24] Rec. Doc. 22.

[25] Rec. Doc. 25.

[26] Rec. Doc. 29.

[27] Rec. Doc. 31.

[28] Rec. Doc. 25-1 at 2.

stricken under Federal Rule of Civil Procedure 12(f).[29] Plaintiff explains the Indemnity Agreement is enforceable as written for the purpose of protecting the surety, not the indemnitors.[30]

Plaintiff contends, under the terms of the Indemnity Agreement, Plaintiff has the exclusive right to settle claims related to the bonds and Plaintiff owes no good faith duty to Defendants.[31] For this reason, Plaintiff argues Defendants' affirmative defense of bad faith is inapplicable to this matter and must be stricken.[32] Plaintiff explains that Defendants gave Plaintiff the right at its option and sole discretion to adjust, settle or compromise any claim, demand, suit or judgment upon any bond.[33] Plaintiff avers that this Court has stricken claims of bad faith against sureties under similar circumstances.[34] Plaintiff contends that a finding of bad faith is dependent upon a finding that an obligation is owed, and because there is no such obligation owed here, Defendants' affirmative defense is inapplicable under Rule 12(f).[35]

Plaintiff argues Defendants' bad faith affirmative defense will cause prejudice by causing Plaintiff to expend unnecessary resources on discovery, future dispositive motions, and a possible trial to defend against a baseless defense.[36] Plaintiff explains that the underlying bonds established a suretyship, and a suretyship does not create an obligation on the surety to the principal.[37] Plaintiff

---

[29] *Id.* at 3.

[30] *Id.*

[31] *Id.* at 4.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 5.

[35] *Id.* at 9.

[36] *Id.* at 9–10.

[37] *Id.* at 10.

reiterates that the bonds did not create rights in favor of Defendants.[38]

As it relates to Defendants' affirmative defense of abuse of rights, Plaintiff argues this defense is also insufficient and immaterial.[39] While Defendants allege Plaintiff's demand for collateral security was an abuse of rights because the amount is in excess of that which was reasonably needed to protect Plaintiff's interests, Plaintiff contends the abuse of rights doctrine is inapplicable here.[40] Plaintiff explains that it exercised the right to demand collateral security from Defendants because Plaintiff received notice from the project owners of Plaintiff's default termination from the Sulphur Project and the Rosteet Project.[41] Plaintiff also contends that it received payment bond claims totaling over $1.2 million at the time the Complaint was filed.[42] Plaintiff alleges that it had suffered losses of $873,593.43, had received claims in excess of $1,246,526.25, and anticipates that its exposure would exceed $5,000,000.00.[43] Plaintiff avers that the amount of Plaintiff's potential loss under the bonds far exceed its collateral demand of $1,084,398.[44] Plaintiff argues that its motive for requesting collateral was to protect itself due to Defendants' default on the bonds, and it was not intended to harm Defendants.[45]

Plaintiff contends that, according to the Indemnity Agreement, Plaintiff was granted the

---

[38] *Id.* at 11.

[39] *Id.*

[40] *Id.*

[41] *Id.* at 12.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

right to demand collateral security to cover losses, which is why collateral was demanded.[46] Plaintiff avers that Plaintiff's abuse of rights defense should be stricken because it cannot succeed as a matter of law, and thus, is insufficient.[47] Plaintiff avers that the abuse of rights defense will prejudice Plaintiff because it will be forced to expend additional time and expenses defending against a meritless defense.[48] For these reasons, Plaintiff asserts that the affirmative defenses of bad faith and abuse of rights should be stricken.[49]

### B.    Defendants' Arguments in Opposition to the Motion

In opposition, Defendants argue that the Answer provides adequate notice of the defenses, and thus, Plaintiff's motion should be denied on the ground that the affirmative defenses were insufficiently pled.[50] Defendants argue that bad faith is a recognized defense to the instant action.[51] Defendants cite Louisiana Civil Code article 1759, which provides that "[g]ood faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation."[52] Defendant states that the Indemnity Agreement includes an obligation to act in good faith as a condition for recovering indemnity for any claimed losses.[53] Defendant argues that, under the terms of the Indemnity Agreement, Plaintiff bears the burden of proving that it acted in good faith with respect

---

[46] Id.

[47] Id. at 13.

[48] Id.

[49] Id.

[50] Rec. Doc. 29 at 2.

[51] Id. at 3.

[52] Id.

[53] Id.

to each payment made.[54]

Defendants contend that the caselaw cited by Plaintiff in its motion does not address whether bad faith is a defense to the surety's demand for indemnity.[55] Defendants aver that in *U.S. Specialty Insurance Company v. Strategic Planning Associates*,[56] the court found that the indemnitor was not precluded from challenging the surety's good faith with respect to certain losses sustained.[57] Defendants argue there is nothing in the Indemnity Agreement that would excuse Plaintiff from Louisiana's general obligation to act in good faith.[58]

As it relates to the affirmative defense of abuse of rights, Defendant asserts that Plaintiff is abusing its rights under the Indemnity Agreement by demanding collateral security in excess of the amount needed to adequately protect its interests.[59] Defendants contend that this Court may infer from the present circumstances that Plaintiff inflated its collateral demand with the intent of "tying up" Defendants' capital.[60] Defendants argue that Plaintiff had no reasonable basis for inflating its collateral demand and the predominant motive was to harm Defendants.[61] Defendants assert that Plaintiff's motion should be denied.[62]

---

[54] *Id.* at 4.

[55] *Id.*

[56] 387 F. Supp. 3d 679 (E.D. La. May 22, 2019).

[57] Rec. Doc. 29 at 5.

[58] *Id.* at 6.

[59] *Id.* at 8.

[60] *Id.* at 9.

[61] *Id.*

[62] *Id.*

C.      *Plaintiff's Motion in Further Support of the Motion*

In further support of the motion, Plaintiff reiterates that Defendants' bad faith and abuse of rights affirmative defenses must be stricken because they are insufficient as a matter of law.[63] Plaintiff points out that Defendants admit in the opposition that abuse of rights is essentially a form of bad faith, and thus, the abuse of rights defense should be stricken because it is duplicative and redundant.[64]

Plaintiff contends that Defendants fail to identify any legitimate legal obligation owed by Plaintiff under the Indemnity Agreement or Louisiana law.[65] While Defendants cite Louisiana Civil Code article 1759 in support of its argument, Plaintiff contends this assertion ignores controlling legal authority that sureties have broad discretion under indemnity agreements.[66] Plaintiff argues without an obligation of good faith, there can be no breach.[67] Plaintiff avers that Louisiana Civil Code article 1759 cannot impose extra-contractual duties where the contract at issue is clear and unambiguous.[68] Plaintiff states that courts have found that indemnity agreements are designed to protect the surety, and the surety owes no fiduciary or extra-contractual duties to the indemnitor.[69]

Plaintiff contends that Defendants fail to account for the clear discretion granted to Plaintiff in the Indemnity Agreement to demand collateral in an amount determined by the surety and that

---

[63] Rec. Doc. 31 at 1.

[64] *Id.*

[65] *Id.*

[66] *Id.* at 2.

[67] *Id.*

[68] *Id.*

[69] *Id.*

Plaintiff may settle claims in its sole discretion.[70] Plaintiff avers that courts have repeatedly enforced similar language as written and rejected bad faith defenses.[71] Plaintiff contends that courts have made it clear that where a surety acts within the scope of its express contractual discretion, bad faith defenses are not viable.[72]

While Defendants argue that the duty of good faith was set out in the Indemnity Agreement, Plaintiff contends Defendants misconstrued the good faith clause.[73] Plaintiff explains that the Indemnity Agreement authorizes Plaintiff to recover "all disbursements made by [surety] in good faith."[74] Plaintiff avers that this provision does not impose an obligation on the surety to the indemnitor.[75]

While Defendants rely on *Strategic Planning Associates*,[76] Plaintiff contends that the court in this case denied summary judgment based on an unresolved legal dispute and did not make a determination as to the theory of bad faith.[77] Plaintiff asserts that the reference to good faith in the Indemnity Agreement does not impose a reciprocal obligation on Plaintiff, nor does it give rise to a viable affirmative defense when the surety has acted within its express contractual authority.[78]

As it relates to the affirmative defense of abuse of rights, Plaintiff argues this defense

---

[70] *Id.* at 3.

[71] *Id.*

[72] *Id.* at 5.

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] 387 F. Supp. 3d 679 (E.D. La. May 22, 2019).

[77] Rec. Doc. 31 at 6.

[78] *Id.* at 7.

merely repackages the bad faith allegations under a different name.[79] Plaintiff explains that courts have consistently limited the doctrine of abuse of rights to rare circumstances, and Defendant has not alleged any such circumstances exist.[80] Plaintiff contends that because the abuse of right theory relied on the same facts and legal contentions as the bad faith defense, it is duplicative and should be stricken.[81] Plaintiff avers that Defendants mischaracterize a claim for affirmative relief as an affirmative defense.[82]

In any event, Plaintiff argues the abuse of rights defense still fails on the merits.[83] Plaintiff explains that the Indemnity Agreement authorizes Plaintiff to demand collateral security of a type and value satisfactory to the surety.[84] Plaintiff contends that Defendants defaulted on bonded projects, and payment claims were made on bonds by subcontractors and suppliers due to Defendants' alleged non-payment.[85] Plaintiff explains that the initial collateral demand was proportionate to the known loss exposure at that time, and the demand was supported by actual claims activity and project terminations.[86] Plaintiff further explains that subsequent demands, including the $5 million demand for collateral security in the Complaint, increased in proportion to the mounting losses Plaintiff incurred under the payment bonds and projections for completing

---

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.* at 8.

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.*

work on the projects.[87] Plaintiff avers that Defendants fail to provide any support that Plaintiff's conduct was arbitrary, malicious, or for an improper purpose.[88] Plaintiff reiterates that Defendants' affirmative defenses should be stricken.[89]

### III. Legal Standard

Federal Rule of Civil Procedure 12(f) allows the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[90] "Both because striking a portion of a pleading is a drastic remedy, and because it is often sought by the movant as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted."[91] Motions to strike "should be granted only when the pleading to be stricken has no possible relation to the controversy."[92]

When a motion to strike is premised on the "insufficiency" of a defense, a movant must demonstrate that the defense is insufficient as a matter of law.[93] A motion to strike should be denied if there is any disputed question of fact.[94] Even when dealing with a pure question of legal sufficiency, courts are still "very reluctant" to determine such issues on a motion to strike, instead

---

[87] *Id.*

[88] *Id.*

[89] *Id.* at 10.

[90] Fed. R. Civ. P. 12(f).

[91] *FDIC v. Niblo*, 821 F.Supp. 441, 449 (N.D. Tex. 1993) (citing *Augustus v. Bd. of Pub. Instr. of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962), and 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380).

[92] *Augustus*, 306 F.2d at 868 (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

[93] *EEOC v. Courtesy Bldg. Servs., Inc.*, 2011 WL 208408, at *1 (N.D. Tex. Jan. 21, 2011) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983)).

[94] *Augustus*, 306 F.2d at 868.

viewing such questions "as best determined only after further development by way of discovery and a hearing on the merits, either on a summary judgment motion or at trial."[95] The trial court has "ample" discretion when considering a Rule 12(f) motion.[96]

Rule 8(c) requires a defendant to "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced."[97] The "fair notice" pleading requirement is met "if the defendant sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise."[98] However, where the affirmative defense is raised in a manner that does not result in unfair surprise, "technical failure to comply precisely with Rule 8(c) is not fatal."[99] Thus, a defendant does not waive an affirmative defense "if it is raised at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond."[100] In some cases, "merely pleading the name of the affirmative defense ... may be sufficient."[101]

## IV. Analysis

On or about November 3, 2022, Defendants executed a General Agreement of Indemnity in favor of Plaintiff.[102] Pursuant to the Indemnity Agreement, Defendants agreed to fully indemnify

---

[95] 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 (3d ed. 2004).

[96] *In re Beef Indus. Antitrust Litig.,* 600 F.2d 1148, 1168 (5th Cir. 1979).

[97] *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).

[98] *Id*. (internal quotations and citations omitted); see also, Ingraham v. United States, 808 F.2d 1075, 1079 (5th Cir. 1987).

[99] *Rogers v. McDorman*, 521 F.3d 381, 385–86 (5th Cir. 2008) (citing *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983)).

[100] *Id*. (internal quotations and citations omitted).

[101] *Woodfield*, 193 F.3d at 362.

[102] Rec. Doc. 1 at 3.

14

and hold Plaintiff harmless from and against any loss incurred by Plaintiff in connection with any bond requested from or issued by Plaintiff for any principal, and Defendants were also obligated to produce financial books and records to Plaintiff.[103] Defendants also assigned, transferred, and conveyed to Plaintiff various rights, titles, and interests in property as collateral security for full performance of the obligations of the Indemnity Agreement.[104] Plaintiff issued multiple payment and performance bonds to Defendants in connection with multiple projects.[105] According to Plaintiff, as a result of Defendants being default terminated from certain projects, Plaintiff has incurred losses totaling $873,593.43, and the losses continue to increase.[106] The Complaint states that Plaintiff has received claims totaling $1,246,526.25, and the amount continues to grow.[107] The Complaint explains that Plaintiff's current anticipated losses under the bonds are in excess of $5,000,000.00.[108]

Plaintiff moves to strike Defendants' affirmative defenses of bad faith and abuse of rights as irrelevant, immaterial, and insufficient. Specifically, Plaintiff argues that (1) it did not owe Defendants a duty of good faith under the Indemnity Agreement or Louisiana law; and (2) the Indemnity Agreement granted Plaintiff the right to demand collateral and settle claims at its discretion. In opposition, Defendants argue that (1) Louisiana law and the Indemnity Agreement require a duty of good faith; and (2) the amount of collateral security demanded by Plaintiff is

---

[103] *Id.* at 4.

[104] *Id.*

[105] *Id.* at 6.

[106] *Id.* at 8.

[107] *Id.*

[108] *Id.* at 9.

excessive and was demanded with the intent to cause financial harm to Defendants.

Contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intention of the parties.[109] They "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance."[110] "A cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage."[111] Some effect is to be given to every word or clause if possible, for a court may not impute to the parties the use of language without meaning or effect.[112]

A "contract of indemnity forms the law between the parties and must be interpreted according to its own terms and conditions."[113] Moreover, Louisiana jurisprudence has consistently recognized a distinction between a contract of indemnity and a contract of suretyship: "In an indemnity contract, the principal and indemnitors can be bound to the surety in any manner they elect in consideration of the surety issuing the bond covering the principal obligation."[114]

---

[109] *St. Ann v. American Insurance Companies*, 182 So. 2d 710, 712 (La. App. 4th Cir. 1966).

[110] *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 2012-2055 (La. 3/19/13), 112 So. 3d 187, 192 (internal citations omitted).

[111] *Lambert v. Maryland Cas. Co.*, 418 So. 2d 553, 559 (La. 1982) (citing La. Civ. Code art. 1955; *Polozola v. Garlock, Inc.*, 343 So. 2d 1000 (La. 1977); *Reuter v. Reuter's Succession*, 206 La. 474, 19 So. 2d 209 (1944); *Solomon v. Hickman*, 219 So. 2d 330 (La. App. 1st Cir. 1969); *Crow v. Southern Natural Gas Company*, 210 So. 2d 596 (La. App. 2d Cir. 1968), *writ refused*, 214 So.2d 160 (La. 1968)).

[112] *American Mfg. Corp. v. National Union Fire Ins. Co.*, 14 So. 2d 430, 433 (La. 1942).

[113] *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 626 (5th Cir. 1993) (quoting *Commercial Union Ins. Co. v. Melikyan*, 430 So. 2d 1217, 1221 (La. App. 1 Cir. 1983)).

[114] *Id.; see also Liem v. Austin Power, Inc.*, 569 So. 2d 601, 608 (La. App. 2 Cir. 1990) (emphasizing that an indemnity agreement is designed "to allocate the risk inherent in the activity between the parties to the contract.").

In this case, Defendants, as indemnitors, executed a General Indemnity Agreement in favor of Plaintiff, as surety. As such, the Indemnity Agreement forms the law between the parties. Pursuant to the contract, the parties agreed, among other things, to:

(1) Indemnitors shall exonerate, indemnify, and keep Surety indemnified from all liability for Loss. Indemnitors shall pay Surety for Loss promptly upon demand. If Surety makes any Loss payment, Indemnitors agree that in any accounting between Surety and Principals, between Surety and Indemnitors, or either or both of them, Surety is entitled to recover from Indemnitors all disbursements made by it in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by Surety shall be prima facie evidence of the fact and amount of the liability to Surety.

(2) Upon an Event or Default or determination by Surety that a potential Loss exists, Surety may demand that Indemnitors deposit a sum of money equal to an amount determined by Surety, or collateral security of a type and value satisfactory to Surety, to cover the Loss, whether or not surety has: (a) established or increased any reserve; (b) made any Loss payment; or (c) received any notice of any claims therefor. At Surety's sole option, this collateral may be in addition to and not in lieu of any other collateral, and Surety may make multiple demands for collateral. Unless the Indemnitors and Surety agree otherwise in writing, Surety shall have the right to use any collateral or any part thereof in payment or settlement of any liabilities for which Indemnitors would be obliged to indemnity Surety and Surety shall have no obligation to invest or to provide a return on any collateral provided.

The Answer filed by Defendants states as follows:

Under Louisiana law, all parties have an obligation to perform a contract in good faith. Plaintiff violated that good faith obligation by intentionally and grossly exaggerating its claims of anticipated losses on the bonded projects to justify the extreme collateral security remedy it demanded in an effort to damage the business operations of Ryder & Ryder and to make it more difficult for Defendants to contest Plaintiff's claims in this legal proceeding by denying Defendants funds needed to operate the business and to defend themselves in this action.
…
Plaintiff's demand for collateral security, in an amount grossly in excess of that which was reasonably needed to protect Plaintiff's interest under the circumstances, was an abuse of rights.
…
Plaintiff acted in bad faith by paying or agreeing to settle claims of certain subcontractors or suppliers of Ryder on the bonded projects for amounts which

were clearly not owed under the terms of the subcontracts.

…

Plaintiff acted in bad faith by agreeing to perform additional work, not within the scope of Ryder's bonded contracts with the owners and then attempting to charge Defendants for that additional work.

…

Plaintiff acted in bad faith by interfering and intervening in the operations of projects for which Ryder had not been placed in default by the owners.

…

Plaintiff acted in bad faith by instructing owners to cease issuing payments to Ryder on projects on which Ryder had not been declared in default, while at the same time demanding that Ryder continue to perform the work, while also refusing to release contract funds needed to pay for Ryder's costs of performing the contract work.

…

In late 2024, Plaintiff instructed the owner of each bonded project to cease issuing payments to Ryder making it impossible for Ryder to use the contract funds to pay for Ryder's continuing performance of the work, thereby giving rise to many of the subcontractor claims that Plaintiff now contends are losses it incurred on the projects. On information and belief, Plaintiff failed to use the contract funds Plaintiff received from the owners to satisfy obligations of subcontractors on the bonded projects. Defendants plead Plaintiff's fault in causing the losses now being claimed by Plaintiff.[115]

As an initial matter, the Court addresses Plaintiff's argument that the affirmative defense of abuse of rights is duplicative of the bad faith defense. Abuse of rights is a specific form of bad faith recognized by Louisiana law, but not every instance of bad faith qualifies as an abuse of rights.[116] While the two overlap, abuse of rights is a distinct doctrine, not synonymous with bad faith. For these reasons, the Court rejects Plaintiff's argument that the abuse of rights defense is duplicative and addresses each affirmative defense in turn.

## A.    *Abuse of Rights*

Defendants assert that Plaintiff's demand for collateral security in an amount in excess of that which was reasonably needed to protect Plaintiff's interest under the circumstances, was an

---

[115] Rec. Doc. 21 at 15–17.

[116] *See* § 3:5. Abuse of right as fault, 4 La. Civ. L. Treatise, Predial Servitudes § 3:5 (4th ed.).

abuse of rights. The Louisiana Supreme Court has described the abuse of rights doctrine in the following terms:

> In its origin, the abuse of rights doctrine was applied to prevent the holder of rights or powers from exercising those rights exclusively for the purpose of harming another, but today most courts in civil law jurisdictions will find an act abusive if the predominant motive for it was to cause harm .... The doctrine has been applied where an intent to harm was not proven, if it was shown that there was no serious and legitimate interest in the exercise of the right worthy of judicial protection. Protection or enforcement of a right has been denied when the exercise of the right is against moral rules, good faith or elementary fairness. Another criteria, espoused originally by the French scholar Louis Josserand, would require an examination of the purpose for which the right was granted. If the holder of the right exercised the right for a purpose other than that for which the right was granted, then he may have abused the right.[117]

Louisiana courts will apply the abuse of rights doctrine only when one of four conditions is met:

> (1) the exercise of rights exclusively for the purpose of harming another or with the predominant motive to cause harm;
> (2) the non-existence of a serious and legitimate interest that is worthy of judicial protection;
> (3) the use of the right in violation of moral rules, good faith or elementary fairness; or
> (4) the exercise of the right for a purpose other than that for which it was granted.[118]

Courts will find an abuse of rights "only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights."[119] Here, Defendants argue that Plaintiff's exercise of rights was exclusively for the purpose of causing financial harm to Defendants. While Plaintiff denies this allegation and asserts that its collateral demand was authorized and reasonable, at the pleading stage, the Court cannot conclude that Defendants' allegations of abuse of rights are insufficient as a matter of law. Whether Plaintiff's actions

---

[117] *Illinois Cent. Gulf R. Co. v. Int'l Harvester Co.*, 368 So. 2d 1009, 1014 (La. 1979).

[118] *Real Estate Services, Inc. v. Barnes*, 451 So. 2d 1229 (La. App. 4th Cir. 1984).

[119] *Truschinger v. Pak*, 513 So. 2d 1151, 1154 (La. 1987).

constituted an abuse of rights involves factual determinations that are not appropriately resolved on a motion to strike.[120] For these reasons, the Court denies the motion to strike the abuse of rights defense.

### B.    Bad Faith

Plaintiff seeks to strike the affirmative defense of bad faith, arguing it is insufficient as a matter of law because Plaintiff did not owe Defendants a duty of good faith under Louisiana law or under the terms of the Indemnity Agreement.

Under Louisiana law, "[s]uretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."[121] Accordingly, "[a] suretyship contract is unilateral; it obligates the surety to the creditor and imposes a contractual obligation on the surety to the creditor."[122] Although the principal obligor (or debtor) is not a party to the contract of suretyship, the surety nonetheless has certain rights against him.[123] Notably, "[a] surety has the right of subrogation, the right of reimbursement, and the right to require security from the principal obligor."[124] However, the surety's right of reimbursement is not absolute:

> A surety who in *good faith* pays the creditor when the principal obligation is extinguished, or when the principal obligor had the means of defeating it, is nevertheless entitled to reimbursement from the principal obligor if the surety made a reasonable effort to notify the principal obligor that the creditor was insisting on payment or if the principal obligor was apprised that the creditor was insisting on

---

[120] *See Currier v. Entergy Servs., Inc.* 73 F. Supp. 3d 673, 680 (E.D. La. Dec. 18, 2014) (finding no evidence to support an abuse of rights claim at the summary judgment phase); *see also Morice v. Hosp. Serv. Distr. 3,* 430 F. Supp. 3d 182, 213 (E.D. La. Dec. 27, 2019) (denying motion to dismiss abuse of rights claim).

[121] La. Civ. Code art. 3035.

[122] Michael H. Rubin, <u>Ruminations on Suretyship</u>, 57 La. L. Rev. 567, 568 (1997).

[123] *See* La. Civ. Code arts. 3047–3049.

[124] *Id*. at art. 3047.

payment.[125]

Here, Defendants aver Plaintiff acted in bad faith by (1) paying or agreeing to settle claims of certain subcontractors or suppliers of Ryder on the bonded projects; (2) by agreeing to perform additional work, not within the scope of Ryder's bonded contracts with the owners and then attempting to charge Defendants for that additional work; (3) by interfering and intervening in the operations of projects for which Ryder had not been placed in default by the owners; and (4) instructing owners to cease issuing payments to Ryder on projects on which Ryder had not been declared in default, while at the same time demanding that Ryder continue to perform the work, while also refusing to release contract funds needed to pay for Ryder's costs of performing the contract work.

While Plaintiff asserts that Defendants' affirmative defense of bad faith fails as a matter of law, the Court disagrees. While the mere existence of suretyship contract does not impose fiduciary duties upon the surety in favor of the principal,[126] "a surety's bad faith payment gives the principal obligor a defense to the surety's right of reimbursement but does not give the principal obligor an independent cause of action against the surety."[127] As stated above, the instant Indemnity Agreement between the parties stated, "[s]urety is entitled to recover from Indemnitors all disbursements made by it in good faith…" In analyzing a similar provision, the Court in *International Fidelity Insurance Co.* reasoned that "…even though a principal cannot bring a tort claim of bad faith against a surety, a principal may assert a surety's bad faith as a defense to a

---

[125] *Id*. at art. 3050. (emphasis added).

[126] *See Abbott v. Equity Grp., Inc.,* No. 86-4186, 1990 WL 3152, at *5 (E.D. La. Jan. 5, 1990), *amended,* No. 86-4186, 1990 WL 32979 (E.D. La. Mar. 20, 1990) ("In general, a surety does not owe a fiduciary duty to its principal....") (internal citations omitted).

[127] *U.S. Specialty Ins. Co. v. Strategic Plan. Assocs., LLC*, No. CV 18-7741, 2019 WL 296864, at *4 (E.D. La. Jan. 23, 2019)

claim for indemnification. In other words, once [the surety] has made a disbursement, its right to indemnification is conditioned on a finding that it made the disbursement in good faith."[128] "Courts have recognized that one exception to enforcement of a principal's liability for a surety's disbursement is bad faith or fraudulent payment."[129] Defendants' affirmative defense of bad faith has not been shown to be insufficient as matter of law. As such, the Court denies the motion as to strike the affirmative defense of bad faith.

### V. Conclusion

For the reasons stated herein, the Court finds that whether Plaintiff's actions constituted an abuse of rights involves factual determinations that are not appropriately resolved on a motion to strike. The Court further finds that Plaintiff has not shown that Defendants' affirmative defense of bad faith is insufficient as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike[130] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  16th  day of October, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[128] *International Fidelity Ins. Co. v. Vimas Painting Co., Inc.,* 2009 WL 485494, at *6 (S.D. Ohio Feb. 26, 2009); *see also U.S. Fidelity & Guar. Co v. Feibus,* 15 F. Supp. 2d 579 (M.D. Penn. May 8, 1998).

[129] *U.S. Fidelity & Guar. Co.,* 15 F. Supp. 2d at 585 (citing *Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.,* 722 F.2d 1160 (4th Cir. 1983)).

[130] Rec. Doc. 25.