UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OHIO CASUALTY INSURANCE CO. | * | CIVIL ACTION NO. 25-424 |
| | * | |
| VERSUS | * | SECTION: "C"(1) |
| | * | |
| RYDER & RYDER, LTD., ET AL. | * | JUDGE WILLIAM J. CRAIN |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

This is an action by a surety to obtain indemnity and other relief it is allegedly owed under an indemnity agreement for making payment to claimants on the payment and performance bonds it issued in favor of the defendants. On February 4, 2026, the Court granted plaintiff's Motion to Compel at oral argument, ordering defendants to produce certain documents and information by February 18, 2026, and holding plaintiff's request for attorney's fees in abeyance. Rec. Doc. 44. Defendants made a partial production on that date and a supplemental production the following date. They submit their production is substantially complete, but they report that they are continuing their efforts to produce the requested documents. Plaintiff insists it is entitled to its attorneys' fees. Under the circumstances, the Court finds a partial award of attorneys' fees appropriate, as further provided herein.

Background

The Ohio Casualty Insurance Company, a wholly-owned subsidiary of Liberty Mutual Insurance Company ("Liberty"), is a surety company that issues payment and performance bonds. Ryder & Ryder, Ltd. is a general contractor whose sole director is Patrick B. Ryder, Jr. In 2022, Ryder Ltd. and Mr. Ryder executed a General Agreement of Indemnity in favor of Liberty, agreeing

1

to indemnify Liberty from all liability for "Loss." Rec. Doc. 1-2, ¶4. The Agreement defines Loss as

> any loss, fees, costs and expenses, including pre- and post-judgment interest at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering and outside consulting fees, which Surety may sustain or incur or otherwise determine to pay in its sole and absolute discretion, by reason of: (a) a request for a Bond; (b) execution or procurement of a Bond, including any cost incurred by Surety in fulfilling its obligations under any Bond; (c) the failure of Indemnitors to comply with any covenants or conditions of this Agreement or Other Agreement; or (d) in enforcing any of the covenants and conditions of this Agreement or Other Agreements.

Id. ¶1. Ryder Ltd. and Mr. Ryder also agreed to "furnish Surety such information as it may request from time to time concerning the financial condition of Indemnitors, the status of work under any contract or other obligation covered by a Bond, [and] the condition of the performance of any such contract or other obligation . . . ." Id. ¶13. They also agreed that Liberty could "examine and copy the books, records and accounts" of either of them. Id.

Liberty issued the following performance and payment bonds:

- No. 999271256 in favor of Hospital Service District No. 1 of Tangipahoa Parish d/b/a North Oaks Health System in connection with a project known as NOMC Pharmacy Air Handler Addition and Renovations to Comply with USP 797, (the "Pharmacy Project").

- No. 999292678 in favor of Calcasieu Parish School Board in connection with a project for Hurricane Laura repairs at Iowa High School in Iowa, Louisiana (the "Iowa High School Project").

- No. 999306033 in favor of Calcasieu Parish School Board in connection with a project for Hurricane Laura repairs and restoration of the Rosteet Annex (the "Rosteet Annex Project").

2

- No. 022235173 in favor of Calcasieu Parish School Board in connection with hurricane repairs at Sulphur High School in Sulphur, Louisiana (the "Sulphur High School Project").

- No. 18L005703 in favor of Calcasieu Parish Police Jury in connection with a project for asbestos removal and abatement at the Old Courthouse (the "Old Courthouse Project").

- No. 999273111 in favor of City of Ponchatoula in connection with renovations to the Buddy Dufreche Baseball Stadium in Ponchatoula, Louisiana (the "Baseball Stadium Project").

Liberty alleges that as of the time it filed the present lawsuit, it has received $1,246,526.25 in claims from subcontractors on the cited projects and has incurred $873,593.43 in "Losses" as defined by the indemnity agreement. It has demanded that Ryder Ltd. and Mr. Ryder indemnify it for its Losses arising under the Bonds.

Liberty filed its Complaint against Ryder Ltd. and Mr. Ryder on February 28, 2025. In addition to indemnity, it seeks specific performance of the provisions of the indemnity agreement requiring Ryder Ltd. and Mr. Ryder to deposit collateral security, permit Liberty to review books and records, and preserve assets (all triggered upon event of default or determination by Liberty that a potential loss exists). Trial was set to begin on June 1, 2026. The deadline to complete discovery was March 20, 2026.

The present discovery dispute proceeded along the following timeline. Liberty served its discovery requests on August 28, 2025. It granted defendants an extension to October 17, 2025, to respond. But defendants did not provide responses until November 6, 2025. At that time, defendants' counsel noted that Mr. Ryder's responses would be supplemented as additional documents were received. Liberty sent an email on December 3, 2025, demanding production of all requested documents and arguing that Mr. Ryder could not assert relevance objections because

he had been late in producing his responses. Defendants' counsel responded the same day and reported that they were still working on getting documents.

The supplementation was not received, and Liberty filed a Motion to Compel on January 9, 2026. The Court held oral argument and granted the motion. As to some of the requests, defendants admitted they had not yet completed their production of relevant emails and project documents. Defendants were ordered to make this production as requested. As to the other requests, the Court imposed limitations. For example, Liberty's discovery requests define "the Projects" at issue as including not only the six named projects but also "any other project for which Liberty Mutual issued payment and performance bonds on behalf of" the defendants. The Court limited the requests for all accounts receivable, accounts payable ledgers, and profit loss statements/projections related to "the Projects" to include only the projects at issue in this lawsuit. Additionally, the request for "any and all Documents evidencing any ownership in property, real or personal" was limited to only real property and defendants were given the option to provide a certified list rather than documents.

Specifically, the Court's order required defendants to produce the following by February 18, 2026:

- All documents responsive to Requests for Production 4, 6, and 9.

- Accounts receivable and accounts payable ledgers for the six projects at issue in this lawsuit (RFP 14).

- All contracts on which defendants are now performing services or providing materials OR a certified list of such contracts including contract amounts (RFP 15).

4

- Documents evidencing ownership in real property OR a certified list identifying such property (RFP 19).

- A list of all lawsuits the defendants have been party to over the last ten years that relate to payment disputes, bonded work, liens, performance/payment bond claims, insolvency/bankruptcy, or claims by subcontractors/suppliers (RFP 18).

- Profit and loss statements/projections for the six projects at issue (RFP 16).

There is no dispute that defendants failed to fully comply with this Order. First, although defendants partially responded on February 18, 2026, as ordered, they also partially responded a day late, on February 19, 2026. On the 18th, they claim to have satisfied bullets three, four, and five by producing lists of contracts, property, and lawsuits. On the 19th, they produced documents. Neither party has described the contents of this document production, but Liberty submits that defendants' "document production may in fact be incomplete" and that "it is possible that the [defendants] have relevant and discoverable text messages that they still have not produced." Rec. Doc. 51, at 3. Defendants admit that Ryder & Ryder is still "continuing its efforts to produce" the requested documents. Rec. Doc. 52, at 2.[1] Thus, in addition to the one-day delay, there appears to be agreement that Ryder & Ryder has not fully complied with the Court's discovery order because it has not produced all documents.

Liberty insists that it is entitled to an attorneys' fee award in the amount of $13,973, which it claims are the attorneys' fees "related to this discovery dispute." Rec. Doc. 51, at 3. Defendants argue that they have substantially complied with the Court's order and ask the Court to take this into account in considering Liberty's request for attorneys' fees.

---

[1] Liberty points out that Mr. Ryder produced no documents. But defendants explain that Mr. Ryder has no additional documents or information that is responsive to Liberty's discovery requests. Rec. Doc. 52, at 2.

Meanwhile, the parties moved jointly to continue the trial, noting among other things that Liberty required additional time to review the supplemental production and complete depositions of key fact witnesses. On March 3, 2026, the District Court continued the trial and all pretrial deadlines. A scheduling conference has been set for March 31, 2026.

Law and Analysis

1. *Standard for Awarding Attorneys' Fees*

There are two vehicles for an award of attorneys' fees that may be implicated in this case. Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, the Court will award the prevailing party on a motion to compel its attorneys' fees under certain circumstances. And pursuant to Rule 37(b), an award of attorneys' fees is an available sanction against a party or attorney who has failed to obey a discovery order.

If the Court grants a Rule 37 motion to compel, it must "after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Id. R. 37(a)(5)(A). However, fees are not to be awarded where: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Id. A motion is substantially justified "if there is a genuine dispute or if reasonable people could differ as to [the appropriateness of the contested action]." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citations and quotation marks omitted) (alteration in original).

Additionally, "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further

just orders." Fed. R. Civ. Proc. 37(b)(2)(A).  Possible sanctions include treating the failure as contempt of court, directing that certain facts be taken as established for purposes of the action, prohibiting a disobedient party from opposing designated claims, dismissing the action, or rendering default judgment against the disobedient party. Id.  In addition to or instead of one of the sanctions enumerated in Rule 37(b)(2)(A), the court "must order the disobedient party, the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Id. R. 37(b)(2)(C).

An award of attorneys' fees "is designed to penalize those who engage in the charged conduct and to deter others who might be tempted to follow in similar conduct." Batson v. Neal Spelce Assocs., Inc., 765 F.2d 511, 516 (5th Cir. 1985). Importantly, when awarding attorney's fees, the Court can only order payment of those expenses actually "caused by the failure to comply." Id.

2. *Analysis*

The defendants' initial discovery responses were produced about two-and-a-half months after the discovery requests were issued. Although Liberty apparently agreed to a short extension, the discovery responses were produced 20 days after that. And this production came with a promised supplementation. Two months later, no supplementation had been made, necessitating the motion to compel. The motion was granted. Indeed, defendants admitted they had not yet produced Ryder & Ryder's email records related to the property at issue or project records for the Pharmacy Project and the Old Courthouse Project. But, the Court limited the remaining requests at issue, finding them overly broad as written.[2] The defendants' delay as to these Court-limited

---

[2] The Court did not adopt Liberty's primary argument—that all of defendants' objections had been waived by their failure to timely produce their discovery responses.

requests was, therefore, substantially justified. The fact remains, though, that defendants' production may be incomplete even as of February 19, 2026, when defendants argue they substantially complied with the Court's order by making a supplemental production of documents (albeit one day after the deadline). And while there is no evidence that defendants are in bad faith, they have provided no real reason for this delay.[3]

The Court finds that a partial award of attorneys' fees is appropriate here under Rule 37(a) and Rule 37(b). Although defendants were substantially justified in resisting much of the original motion to compel, they have offered no justification for their failure to produce documents in response to requests they never objected to. Liberty did not receive defendants' substantial production of documents until 29 days before the discovery deadline. Defendants' delay required a continuance of the trial. Only a partial award is appropriate, though, because defendants were justified in resisting some of the discovery requests. Further, the Court finds that over $13,000 in fees is excessive. To the extent motion practice was complicated, that is due at least in part to Liberty's refusal to negotiate reasonable limitations to some of its overbroad discovery requests. An award of $4,000 will compensate for Liberty's reasonable attorneys' fees related to defendants' failure to produce unobjectionable documents within a reasonable period of time. The Court will not impose an additional sanction for defendants' one-day delay in complying with the Court's order.

With regard to the possibility that there are additional documents still being sought, the Court will require as follows: within 14 days, each defendant must issue a declaration under penalty of perjury certifying that it has performed a diligent search and produced all responsive documents (subject to the limitations ordered by the Court or agreed to by the parties). If either

---

[3] It appears any prejudice Liberty may have suffered as a result of the delayed production has been remedied by the trial continuance.

defendant fails to timely provide the certification, that defendant will be sanctioned an additional $2,000.

Conclusion

For the foregoing reasons, the Court finds that a partial award of attorneys' fees is appropriate. Accordingly, IT IS ORDERED that within 30 days, defendants shall pay Liberty $4,000 for Liberty's reasonable attorneys' fees related to defendants' failure to produce unobjectionable documents within a reasonable period of time. IT IS FURTHER ORDERED that within 14 days, each defendant will issue a declaration under penalty of perjury certifying that it has performed a diligent search and produced all responsive documents (subject to the limitations ordered by the Court or agreed to by the parties). The failure of either defendant to timely provide the certification will result in an additional sanction of $2,000 to be paid by that defendant(s) to Liberty.

New Orleans, Louisiana, this 30th day of March, 2026.

_____
Janis van Meerveld
United States Magistrate Judge

9